UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JEANETTE BRIDGES,

               Plaintiff,

v.                                    Case No.  5:09-cv-498-Oc-JBT

MICHAEL J. ASTRUE, Commissioner of
the Social Security Administration,

               Defendant.
_____/

## ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a Period of Disability and Disability Insurance Benefits ("DIB").  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED and REMANDED**.

### I.     Issues on Appeal and Summary of Decision

There are two issues on appeal.  First, Plaintiff contends that the Administrative Law Judge ("ALJ") improperly rendered medical opinions and improperly weighed the Medical Source Statement (Mental) opinions of Dr. Sofia Qadir, Plaintiff's treating psychiatrist.  Second, Plaintiff argues that the ALJ improperly determined that Plaintiff could perform her past relevant work as a rural

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 13 & 14.)

mail carrier, when she had previously received a disability retirement from that same position by the United States Office of Personnel Management  ("OPM").

For the reasons stated herein, the Court affirms the ALJ on the first issue because the ALJ's consideration of Dr. Qadir's opinions is supported by substantial evidence.  However, the Court reverses and remands on the second issue because the ALJ did not give proper consideration to the disability determination of another agency, in this case OPM.

## II.    Procedural History and Summary of the ALJ's Decision

On March 22, 2006, Plaintiff protectively filed applications for a Period of Disability and DIB, alleging a disability onset date of December 13, 2005. (Tr. 11, 116-21.)  The Social Security Administration ("SSA") denied these applications initially and upon reconsideration. (Tr. 50-56, 61-62.)  Plaintiff then requested and received a hearing before an ALJ on September 30, 2008, during which she testified and was represented by a non-attorney representative.  (Tr. 22-49, 64.)

After the hearing, the ALJ ordered a consultative examination with a psychologist (Tr. 429-34), and submitted interrogatories to a vocational expert ("VE").  (Tr. 232-40.)  The VE opined that Plaintiff could perform her past work as a rural mail carrier, as well as  other work in the national economy – i.e., porter, used car lot; sandwich maker; and kitchen helper.

On July 28, 2009, the ALJ issued his decision, finding Plaintiff not disabled and denying her claim.  (Tr. 11-21.)  The ALJ first determined Plaintiff met the

2

insured status requirements of the Social Security Act through December 31, 2010. (Tr. 13.)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 13, 2005, the alleged onset date. (*Id*.) At step two, the ALJ determined that Plaintiff had the following severe impairments: affective disorder; obstructive sleep apnea, under partial control; and obesity. (*Id*.)

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1525 and 404.1526). (*Id*.)  Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work with the exceptions that she be limited to making routine work-related decisions and no management/executive decision-making. (Tr. 16.)  In reaching this conclusion, the ALJ considered the opinions of Plaintiff's treating psychiatrist, Dr. Qadir, but did not completely accept them.  The ALJ accorded great weight to the opinions of Dr. William Austin, a consultative examiner, and Dr. Jill Rowan, a non-examining state agency physician.  In addition, the ALJ briefly mentioned that Plaintiff had been approved for disability retirement through OPM, but accorded no weight to that finding of disability. (Tr. 19-20.)

At step four, the ALJ determined Plaintiff was capable of performing her past relevant work as a rural mail carrier as it is generally performed in the national economy. (Tr. 20.)  The ALJ then continued to step five, where he found that based on the interrogatory responses of the VE, and considering Plaintiff's age, education,

work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 20-21.) Thus, the ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act from December 13, 2005 through the date of the decision. (*Id*.)

Following the ALJ's decision, Plaintiff filed a Request for Review by the Appeals Council, which was denied. (Tr. 1-7.) Accordingly, the ALJ's July 28, 2009 decision was the final decision of the Commissioner. (Tr. 1.) On November 12, 2009, Plaintiff timely filed her Complaint with this Court. (Doc. 1.)

III.    **Summary of Evidence**

Plaintiff worked as a rural postal carrier, a job that she performed for nineteen years, until December 13, 2005. In July 2007, OPM found Plaintiff disabled from this position, due to bipolar disorder. (Tr. 223.) Plaintiff was approved for disability retirement under the Federal Employees Retirement System ("FERS") with payments beginning in October 2006. (Tr. 224-29.)

Plaintiff has a history of bipolar disorder, dating back as early as December 2002 when she was admitted to Florida Hospital Center under the Baker Act. (Tr. 244-60.) From May 2005[2] through September 2008, Plaintiff was treated for bipolar disorder by Dr. Qadir, at Tri-County Psychiatric Associates ("Tri-County"). (Tr. 261-

---

[2] Although Dr. Qadir notes that she began treating Plaintiff in January 2002 (Tr. 323), the earliest treatment notes in the record begin in May 2005.

4

70, 300-04, 345-61, 413-28.)  Plaintiff was admitted to the hospital under the Baker Act for a second time in April 2007.  (Tr. 326-43.)

On September 2, 2008, Dr. Qadir completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) ("MSS")[3] (Tr. 411-12), in which she assessed a marked limitation in Plaintiff's ability to understand and remember detailed instructions and extreme limitations in Plaintiff's ability to carry out detailed instructions and respond appropriately to changes in a routine work setting. Otherwise, Dr. Qadir assessed slight or moderate limitations.

In January 2007, state agency physician, Jill Rowan, Ph.D., completed a Psychiatric Review Technique form and Mental RFC Assessment in which she reviewed the medical records and found only moderate limitations resulting from Plaintiff's bipolar disorder.  (Tr. 305-21.)  Dr. Rowan explained that while Plaintiff would have difficulty with complex/high demand tasks, she could carry out simple, routine and repetitive tasks that are not high in social demands. (Tr. 306, 321.)

After the hearing, the ALJ referred Plaintiff to William W. Austin, Psy.D., for a consultative evaluation, including the administration of personality testing.  (Tr. 429-31.)  Dr. Austin opined that Plaintiff retained the ability to understand, remember, and carry out simple instructions but would be mildly limited in regards to complex instructions; was moderately limited in her ability to make judgments on complex

---

[3] An MSS is "a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." SSR 96-5p.

work-related decisions, but had no limitation regarding simple work-related decisions; and had only mild limitations in her ability to interact appropriately with the public, supervisors and co-workers, and to respond to changes in a routine work setting.[4]  (Tr. 432-34.)

## IV.    Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. § 404.1520.  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988)(citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C.

---

[4]  Magaly Delgado, Psy.D., another doctor at Access Behavioral Care Associates, P.A., prepared the written disability evaluation.

§405(g).  Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) ("Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'")

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam.)  "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."  *Foote*, 67 F.3d at 1560, *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings.)

V.     **Analysis**

A.     **The ALJ's Evaluation of the Opinions of Dr. Qadir is Supported by Substantial Evidence**

7

Plaintiff argues that the ALJ failed to properly consider the opinion of her treating psychiatrist, Dr. Qadir. Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards*, 937 F.2d at 583. A treating physician's opinion on the nature and severity of Plaintiff's impairments is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if "it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards*, 937 F.2d at 583. "The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments." *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (*per curiam*); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) (finding that a treating physician's opinion that claimant was totally disabled was properly discounted because "it was not supported by objective medical evidence and was merely conclusory")

At issue here is Dr. Qadir's September 2, 2008 MSS in which she assessed mild or slight limitations, but also included marked limitations in understanding and remembering detailed instructions and extreme limitations in carrying out detailed

8

instructions and responding to changes in a routine work setting.[5]   (Tr. 411-12.)  As the ALJ noted, this opinion is "tantamount to a conclusion that a person is 'disabled,' since one cannot work at even entry level jobs if one has 'extreme' difficulty in accommodating routine changes." (Tr. 20.)

The ALJ summarized his reasoning supporting his RFC determination as follows: "In sum, the above residual functional capacity assessment is supported by the rather conservative treatment received by the claimant and her apparent response when compliant with medication, the opinions of Dr. Austin and Dr. Rowan, and in regards to some of the opinion of Dr. Qadir." (*Id.*)

Upon a review of the ALJ's decision, as well as an examination of the record as a whole, the Court finds that the ALJ properly considered the opinions of Dr. Qadir as a treating physician and articulated good cause for not accepting all of Dr. Qadir's September 2, 2008 opinions regarding Plaintiff's functional limitations.

First, the ALJ noted that some of Dr. Qadir's opinions were not well-supported by her own treatment records.  (*Id.*)  The record includes Dr. Qadir's treatment of Plaintiff from May 2005 through September 2008.  Dr. Qadir prescribed medication therapy that she occasionally adjusted.  The ALJ correctly noted that no other

---

[5] In a May 28, 2008 letter addressed "[t]o whom it may concern", Dr. Qadir stated that Plaintiff is "totally and permanently disabled" and "unable to work due to her disability." (Tr. 416.)  The ALJ correctly noted that the issue of whether an individual is disabled or unable to work is reserved to the Commissioner and opinions on such issues are not entitled to significant weight. 20 C.F.R. § 404.1527(e)(3).  Plaintiff does not challenge this finding.

treatment, such as individual counseling, group therapy or inpatient treatment, was ever recommended. (Tr. 17.)  By June 2005 and through the rest of 2005, the records showed reports of improvement and unremarkable mental status findings. (Tr. 264-67.) No changes were made to Plaintiff's medications during this period. The ALJ correctly noted that no changes in medication during this period (and at other times, such as from March 2008 through September 2008) corroborate a finding that Plaintiff's bipolar disorder is controlled with medication.[6]   (Tr. 17-18.)

On January 25, 2006, Plaintiff reported feeling better since deciding that she could not return to work.  (Tr. 268.)   Dr. Qadir needed to change her sleep medication, but by March 1, 2006, Plaintiff reported doing much better.  (Tr. 269.) During the rest of 2006, Plaintiff reported situational stressors, ups and downs and feeling depressed, guilty, helpless and worthless, but the findings on mental examination were mostly normal. (Tr. 270, 300-04, 346-61.) On July 26, 2006, while it was noted that Plaintiff's memory was poor and she reported making notes for everything, she stated that she was doing "pretty well" and on mental status examination, Plaintiff was oriented to person, place and time; her speech was normal, organized and goal directed; she denied hallucinations and delusions as well as homicidal or suicidal ideations; her insight and judgment were good; and her sleep and appetite were within normal limits.  (Tr. 303-04.)   She was alert,

---

[6] The alleged disability onset date is December 13, 2005, and this prior treatment history is given as background.

responsive and had good eye contact. (*Id.*) There was no change to Plaintiff's medication and her progress with the treatment plan was "good."  (*Id.*)

The ALJ correctly noted a gap in treatment between Plaintiff's November 2006 visit and her next visit in September 2007. (Tr. 17.)  While Dr. Qadir stated in a March 19, 2007 letter that she had been treating Plaintiff since January 2002 and that Plaintiff currently was taking psychotropics, the letter does not provide any information about the last time she examined Plaintiff or managed her medication plan, nor does it state when Plaintiff's next appointment was scheduled.[7]  (Tr. 323.) There is no other record evidence showing visits to Tri-County or records of medication management during this time period.

As the ALJ noted, it was during this gap in treatment in April 2007 that Plaintiff was hospitalized again under the Baker Act. (Tr. 17.)  The ALJ correctly stated that there was no evidence that Plaintiff was being maintained under medication management by Tri-County (or any other doctor) during this time and that there was evidence that Plaintiff had failed to take her prescribed bipolar and sleep medications prior to her hospitalization.  (*Id.*)  The ALJ's observations – which are factually supported by the record (Tr. 399 ("She was changed to depakote 04/2007 after missing her other bipolar meds (name unknown) and was hospitalized at this time"), Tr. 339 (Plaintiff reported she missed four scheduled doses of ambien)) –

---

[7] At the hearing, Plaintiff testified that she had never gone longer than three months without seeing Dr. Qadir. (Tr. 33.)

corroborate the ALJ's conclusion that Plaintiff appears to respond to prescribed medication when compliant.

Dr. Qadir's more recent treatment records show mostly unremarkable mental status findings. In September 2007, Dr. Qadir noted Plaintiff's mood was stable, she was alert and responsive, with good eye contact. (Tr. 425.) Other than noting that her mood was anxious, Dr. Qadir's findings were normal – Plaintiff had good orientation and appearance, normal speech and motor findings, good sleep, appetite, and concentration, appropriate affect, clear thoughts and normal judgment and insight. Mental examinations in November and December 2007 also showed normal, good or fair mental status findings in those areas of functioning. (Tr. 421-24.) Other than noting anxious mood, Dr. Qadir's mental status exam findings from January to September 2008 were generally unremarkable. (Tr. 413-20.) In March 2008, Dr. Qadir adjusted Plaintiff's medication (Tr. 418), and by June 2008, Plaintiff's concentration was doing "better with meds."[8] (Tr. 415.) On September 2, 2008 – the same date she completed the MSS – Dr. Qadir noted that Plaintiff was "essentially unchanged." (Tr. 413.) Dr. Qadir also noted that Plaintiff's concentration and focus

---

[8]The ALJ noted Plaintiff's medications were not changed from March 2008 through September 2008, which was "indicative that the claimant's medications were controlling her symptoms of bipolar disorder." (Tr. 18.) Plaintiff argues that this observation was factually incorrect and constitutes an improper assumption and medical opinion. While Plaintiff's medications were adjusted on March 19, 2008, they were not adjusted again through the appointment on September 2, 2008. Moreover, it was reasonable (and did not constitute an improper medical opinion) for the ALJ to assume that Plaintiff's medications were not changed because they were controlling her symptoms.

"remain a major issue" despite consistently having found in earlier examinations that Plaintiff was focused and attentive with fair concentration. (*Id*.)    Accordingly, the ALJ could reasonably conclude that some of Dr. Qadir's opinions were not well-supported by her own treatment records.

Plaintiff argues that the ALJ made an improper assumption and medical opinion when he stated that Dr. Qadir's opinion of Plaintiff's ability to respond appropriately to change "appears more in response to the claimant's own report of symptoms than as an impartial assessment of the claimant's functionality." (Tr. 19-20.) The ALJ's opinion, however, was both reasonable and supported by the record. While Dr. Qadir's treatment records include numerous descriptions of Plaintiff's subjective reports, the objective medical findings do not corroborate Dr. Qadir's opinion that Plaintiff has an extreme limitation in accommodating routine change.

The ALJ also reasoned that Dr. Qadir's opinion was inconsistent with the generally normal findings in Plaintiff's most recent psychological evaluation in October 2008 by Dr. Austin.  (Tr. 20, 429-31.)  While personality testing responses showed symptoms of depression, on mental status examination, Plaintiff's mood appeared neutral and her affect was congruent.   Examination findings showed Plaintiff was alert; oriented to person, time and situation; she had adequate attention and concentration; poor recent memory but fair remote memory; no speech deficits or deficits of thought process or thought content; and fair insight, judgment, and impulse control.

13

Dr. Austin completed an MSS based on his evaluation of Plaintiff as well as a review of her psychiatric records. (Tr. 432-34.) In weighing opinion evidence, the ALJ accorded great weight to the opinion of Dr. Austin that Plaintiff retained the ability to understand, remember, and carry out simple instructions but was mildly limited in regards to complex instructions; was moderately limited in her ability to make judgments on complex work-related decisions, but had no limitation regarding simple work-related decisions; and had only mild limitations in her ability to interact appropriately and to respond to changes in a routine work setting.

The ALJ also accorded significant weight to the opinion of reviewing state agency psychiatrist Dr. Rowan, who reviewed Plaintiff's records in January 2007 and found that Plaintiff could carry out simple, routine and repetitive tasks that are not high in social demands and could sustain pace for simple and basic tasks. (Tr. 305-08, 321.) State agency medical consultants are experts in disability evaluation and their opinions may provide substantial evidence to support a finding of no disability. 20 C.F.R. § 404.1527(f)(2); SSR 96-6p.

Accordingly, the ALJ properly evaluated the opinions of Dr. Qadir as a treating physician and articulated good cause for not accepting all of Dr. Qadir's September 2, 2008 opinions regarding Plaintiff's functional limitations.   The ALJ's evaluation is supported by substantial evidence.   Dr. Qadir's treatment notes, as well as the opinions of Dr. Austin and Dr. Rowan, are consistent with the ALJ's RFC

14

assessment limiting Plaintiff to routine work-related decisions and no management/ executive decision-making.  Therefore, this issue does not require reversal.

>    **B.    The ALJ Erred In His Consideration of OPM's Disability Finding**

Plaintiff argues that the ALJ failed to properly consider OPM's determination that Plaintiff is disabled from her position of rural mail carrier.  In response, Defendant contends that the ALJ acknowledged and discredited Plaintiff's OPM disability retirement.  Moreover, Defendant contends that any error in this regard was harmless because the ALJ proceeded to step five, and found that Plaintiff could perform other jobs that exist in significant numbers in the national economy.

While the Social Security Regulations are clear that a disability determination by another agency is not binding on the SSA, *see* 20 C.F.R. § 404.1504, the law of the Eleventh Circuit is equally clear that such a determination should be considered and is entitled to great weight.  *Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983)).  The ALJ is required to give great weight to OPM's finding, or provide an adequate explanation for failing to do so.  *Davis-Gimplin v. Astrue*, 2008 WL 4949115, *4 (M.D. Fla. Nov. 13, 2008).

Here, the record contains evidence of OPM's July 2007 determination that Plaintiff was disabled from her position as rural mail carrier, due to bipolar disorder (Tr. 223); notification that her application for disability retirement under FERS was

approved (Tr. 226-29); and notification that she was entitled to payments beginning in October 2006 (Tr. 224-25).   In addition, there is a "Supervisor's Statement" completed by Plaintiff's supervisor in support of her application for disability retirement, in which he explained that Plaintiff "became unreliable in attendance. When able to report to work, on several occasions would have to leave, be picked up or someone take her home because she was unable to perform the functions of the job."  (Tr. 221-22.)  He further noted that he had made accommodations for Plaintiff, including, cutting her route size and adjusting her start time for work. (*Id*.)

The ALJ briefly mentioned the disability determination in his RFC analysis, stating:

> The undersigned has noted that the claimant has been approved for disability retirement through the U.S. Office of Personnel Management (OPM).  However, the criteria for disability benefits through OPM are not comparable to the criteria as set forth for Social Security disability benefits.  Furthermore, the Administration is not bound by the finding of disability by any other agency or institution.

(Tr. 20.)

This conclusory statement, that the standards of disability "are not comparable," without any further discussion, is inadequate to justify the ALJ's failure to accord great weight to OPM's disability finding.  *See Falcon*, 732 F.2d at 831; *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981); *Davis-Gimplin*, 2008 WL at *4; *Freese v. Astrue*, 2008 WL 1777722, *2 (M.D. Fla. April 18, 2008).  OPM's determination that Plaintiff was disabled from her job based upon bipolar disorder

should have been more closely analyzed by the ALJ.  This lack of consideration is

particularly troubling because the ALJ proceeded to find that Plaintiff could return to

her past work as a rural mail carrier – the exact job from which she was found

disabled based upon her actual performance of the job.  While there could be

legitimate reasons why the finding of disability by FERS is not entitled to great

weight, the ALJ did not provide any.[9]

Moreover, the Court does not consider this error harmless because the ALJ's

analysis of OPM's disability determination on remand may result in a changed RFC,

---

[9] The parties do not discuss the FERS standard for disability in their briefs, nor do they discuss the specific differences between the two standards.  To qualify for disability retirement benefits under FERS, an employee must meet the following requirements: (1) the individual must have completed at least 18 months of civilian service that is creditable under FERS; (2) the individual must, while employed in a position subject to FERS, have become disabled because of a medical condition, resulting in a deficiency in performance, conduct, or attendance, or if there is no such deficiency, the disabling medical condition must be incompatible with either useful and efficient service or retention in the position; (3) the disabling medical condition must be expected to continue at least 1 year from the date the application for disability retirement is filed; (4) accommodation of the disabling medical condition in the position held must be unreasonable; and (5) the individual must not have declined an offer of reassignment to a vacant position. 5 C.F.R. § 844.103.  In determining eligibility for benefits, OPM considers and weighs objective clinical findings, diagnosis and expert medical opinions, subjective evidence of pain and disability, and all the evidence relating to the effect of the employee's condition upon his or her ability to perform in the grade or class of position last occupied.  *Trevan v. Office of Personnel Management*, 69 F.3d 520, 526 (Fed. 1995); *Detwiler v. Office of Personnel Management*, 90 M.S.P.R. 77, 80 (2001) (finding postal worker entitled to disability retirement based on bipolar disorder). The SSA definition of disability is considered to be more strict than the FERS disability definition. *See Trevan v. Office of Personnel Management*, 69 F.3d 520, 524-25 (Fed. 1995).

which in turn could alter not only the step four analysis but the step five analysis as well.[10]  Thus, reversal and remand is necessary.

**VI.    Conclusion**

For the reasons stated in this Order, the ALJ's decision is not supported by substantial evidence and resulted from legal errors.  Therefore, this case must be remanded.

Accordingly, it is **ORDERED**:

1.     The Commissioner's decision is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. §405(g).

2.     On remand, the ALJ shall give proper consideration to OPM's disability finding and accord it great weight or articulate a legitimate basis for not doing so, and conduct any additional proceedings the Commissioner deems appropriate.

3.     Should this remand result in the award of benefits, Plaintiff's attorney is **GRANTED**, pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. §406(b), until thirty (30) days after the date of the Commissioner's letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past due benefit calculation stating the amount withheld for attorney's fees. This order **does**

---

[10] The ALJ included his brief discussion of OPM's determination in his RFC analysis. (Tr. 16-20.)

**not extend** the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. §2412.

    4.    The Clerk of the Court is **DIRECTED** to enter judgment consistent with this Order and close the file.

    **DONE AND ORDERED** at Jacksonville, Florida, on February 8, 2011.


JOEL B. TOOMEY
United States Magistrate Judge


Copies to:

Counsel of Record

19